

**IT IS ORDERED as set forth below:**

**Date:  August 24, 2017**
_____

**W. Homer Drake**
**U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NUMBER |
| | : | |
| ALTON WAYNE KNIGHT, | : | 15-11059-WHD |
| _____ | : | |
| | : | |
| BARBARA COOK, Administrator for | : | ADVERSARY PROCEEDING |
| the Estate of Paul H. Cook, Deceased, | : | NO. 15-1042-WHD |
| | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| ALTON WAYNE KNIGHT, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
|     Defendant. | : | BANKRUPTCY CODE |

## <u>ORDER</u>

The Debtor in the above-styled bankruptcy case filed his Chapter 7

petition on May 18, 2015.   On August 24, 2015, Barbara Cook

(hereinafter the "Plaintiff"), acting in her capacity as administrator of the estate of her late husband, Paul H. Cook, filed the complaint initiating the instant adversary proceeding.  The Plaintiff's complaint contains four counts: (I) the debt the Debtor owes to the Plaintiff should be declared nondischargeable pursuant to § 523(a)(4); (II) the debt should be declared nondischargeable pursuant to § 523(a)(6); (III) the Debtor should be denied a discharge pursuant to § 727; and (IV) the Plaintiff is entitled to attorney's fees pursuant to O.C.G.A. § 13-6-11.

On April 18, 2017, the Plaintiff filed a motion for summary judgment, seeking judgment on all counts of her complaint.  Three days later, the Debtor filed his own motion for summary judgment, seeking judgment as to Count III of the Plaintiff's complaint.  These cross motions for summary judgment are currently before the Court.  As this proceeding concerns dischargeability and entitlement to discharge, it is a

core proceeding, *see* 28 U.S.C. § 157(b)(2)(I), (J), over which this Court has subject matter jurisdiction, *see* 11 U.S.C. §§ 157(a), 1334.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056.  In supporting its motion, "[t]he movant must point to the pleadings, discovery responses or supporting affidavits which tend to show the absence of a genuine issue of material fact." *First Nat'l Bank of Griffin v. Wyatt-Frizzell (In re Frizzell)*, No. 02-6443, 2006 WL 6589889, at *2 (Bankr. N.D. Ga. Aug. 8, 2006) (Drake, J.).  Once that burden is met, the burden shifts to the non-movant "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608

3

(11th Cir. 1991).

A fact is material if its truth or falsity will affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). This means that "[f]actual disputes that are irrelevant or unnecessary" to coming to a decision under the controlling substantive law "will not be counted." *Id.*; *accord Philadelphia Indem. Ins. Co. v. Manitou Constr., Inc.*, 115 F. Supp. 3d 1378, 1382 (N.D. Ga. 2015). Consequently, summary judgment is appropriate where there is "a complete failure of proof concerning an essential element of the nonmovant party's case" because such failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317-18 (1986).

Even if a factual dispute is material, it must still be "genuine." A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S.

4

at 248; *accord Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993). This requires consideration of the evidentiary standard that would be applied at trial. *See Liberty Lobby*, 477 U.S. at 255. Here, the standard of proof on the Plaintiff's counts under sections 523 and 727 is a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991) ("We hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."); *E. Diversified Distribs., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 671 (Bankr. N.D. Ga. 2004) (Mullins, J.) ("As a result [of the Supreme Court's decision in *Grogan*], many courts have concluded that the preponderance of the evidence standard is also appropriate for section 727 actions.").

As a final note, a court must view all of the evidence in the light most favorable to the non-movant. *U.S. v. One Piece of Real Property*

5

*Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004); *Bank of N. Ga. v. McDowell (In re McDowell)*, 497 B.R. 363, 368 (Bankr. N.D. Ga. 2013) (Drake, J.).  With these guiding principles in mind, the Court turns to the motions at hand.

## Background

Paul H. Cook (hereinafter "Cook"), the Plaintiff's late husband, was a certified public accountant practicing in Griffin, Georgia.  Cook and the Debtor were co-members of a Georgia limited liability company, AWKPHC, LLC (hereinafter the "LLC"), which did business as "Knight and Cook CPAs."  Cook died on July 28, 2013, and the Plaintiff became administrator of his estate.  At some point, a disagreement arose between the Debtor and the Plaintiff concerning the ownership and disposition of Cook's client list and interest in the LLC.  Per the LLC's operating agreement, the parties submitted their dispute to arbitration.

6

The arbitrator held his hearing on February 15, 2015.  The hearing appears to have contained all of the trappings of a normal court proceeding: the parties had legal counsel, the arbitrator heard opening statements and closing arguments, the parties presented evidence, the parties had the opportunity to cross-examine witnesses, and the parties were permitted to submit post-hearing briefs.

On March 13, 2015, the arbitrator rendered his decision.  The arbitrator found that the Plaintiff had met with the Debtor in August of 2013.  At that meeting, the parties "agreed that [the Debtor] would collect [Cook's] outstanding receivables, bill for his unbilled services, and would attempt to find a CPA-purchaser for both [Cook's] clients and those of [the Debtor]."  However, when the Plaintiff asked "for financial information on [Cook's] practice and that of the LLC, and for a copy of [Cook's] client list," the Debtor, "for whatever reason,…'stonewalled'

7

[the Plaintiff], refused to deliver [Cook's] client list and financial information, paid out only about $2,800 of funds to [the Plaintiff] from the LLC,…and refused any accounting."   Additionally, the arbitrator found that the Debtor "had decided not to sell his client base, was not attempting to sell [Cook's] client base to a third party CPA, and claimed that the LLC owned [Cook's] client base."   The arbitrator found that the Debtor had "refused to account for sums belonging to [Cook's] estate from the LLC" and that the Debtor "has refused to liquidate the LLC, although that is specifically required by the Operating Agreement upon the death of one of the two Members."

These findings led the arbitrator to conclude as follows:

[T]he Debtor has violated his duties under the LLC Operating Agreement and under Georgia law, has not dealt in good faith with the widow and estate administratrix of his deceased colleague and fellow LLC Member, that he has converted for his own benefit the client base of the decedent, and has not

paid to [the Plaintiff] amounts due her from the LLC.

The arbitrator awarded the Plaintiff the following sums: $150,000 for Cook's client base; $45,000 "representing [Cook's] capital and other interests in the cash accounts of the LLC"; $17,000 in partial attorney's fees; and $11,006.25 as the Plaintiff's share of the costs of arbitration. The award totals $223,006.25.

On April 17, 2015, the Plaintiff filed an action to confirm the award in the Superior Court of Spalding County. However, that action was stayed when the Debtor filed his bankruptcy petition on May 18, 2015.

## Discussion

In the Plaintiff's motion for summary judgment, she asserts that the Court should give preclusive effect to the arbitrator's award and conclude that the debt owed pursuant to that award is excepted from discharge

according to either § 523(a)(4) of the Bankruptcy Code[1] or § 523(a)(6). Additionally, the Plaintiff contends that the Debtor should not receive a discharge at all according to either § 727(a)(2) or (a)(4)[2] because the Debtor made pre-petition transfers to himself from the LLC's accounts and failed to list certain assets in his schedules.

For his part, the Debtor seeks summary judgment only as to the § 727 claims. The Debtor contends that the transfers from the LLC's accounts are not transfers of his assets, and, concerning his failure to schedule assets, that either he did schedule the assets, had no interest in the assets, or failed to schedule them inadvertently.

A. Is the Debt Excepted from Discharge Pursuant to § 523?

The Court will first address the Plaintiff's motion for summary

---

[1] 11 U.S.C. § 101 *et seq.*

[2] The Plaintiff's complaint only identifies § 727(a)(2), but the language employed clearly implicates § 727(a)(4) as well. (*See* Compl., Doc. No. 1, at ¶¶ 42-48).

10

judgment as to the counts of the complaint brought under § 523.  Because the Plaintiff relies on the preclusive effect of the arbitrator's award, the Court will begin its analysis there.

*1. Preclusive Effect of the Arbitration Award*

"Collateral estoppel precludes the relitigation of an issue that has been previously decided in a judicial proceeding if the party against whom the prior decision is asserted had a 'full and fair opportunity to litigate that issue in an earlier proceeding.'" *Foran v. Lutz (In re Lutz)*, 169 B.R. 473, 476 (Bankr. S.D. Ga. 1994) (quoting *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993)). In the context of dischargeability proceedings, "bankruptcy courts have exclusive jurisdiction to determine dischargeability of debts." *Laski v. Gawrys (In re Gawrys)*, No. 14-5006, 2015 WL 2198050, at *2 (Bankr. N.D. Ga. May 8, 2015) (Hagenau, J). However, a bankruptcy court may give preclusive effect to the factual findings of another tribunal and consider those facts in reaching its own conclusion concerning dischargeability. *See Halpern v. First Ga. Bank (In re Halpern)*, 810 F.2d 1061, 1063-64 (11th Cir. 1987); *Hebbard v.*

12

*Camacho (In re Camacho)*, 411 B.R. 496, 501 (Bankr. S.D. Ga. 2009).

Ordinarily, when this Court is tasked with deciding whether to apply collateral estoppel, the Court is dealing with a judgment of another court, usually a state court. *See, e.g.*, *CC Fin., LLC v. Harvey (In re Harvey)*, No. 16-1034, 2017 WL 432788 (Bankr. N.D. Ga. Jan. 31, 2017). Here, the Court is tasked with determining whether to apply collateral estoppel to an arbitration award. At least one court of this District has given preclusive effect to an arbitration award. *See Tower Oak, Inc. v. Selmonosky (In re Selmonosky)*, 204 B.R. 820, 824-27 (Bankr. N.D. Ga. 1996) (Brizendine, J.). Indeed, as the Bankruptcy Court for the Middle District of Florida stated over twenty years ago, "The United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit…, as well as the *Restatement* [*of Judgments*], acknowledge arbitral awards may have preclusive effect." *Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.)*, 196

13

B.R. 602, 609 (Bankr. M.D. Fla. 1996). This is particularly true in situations where preclusion will not intrude on federal interests and in which the "arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence." *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360-61 (11th Cir. 1985). Consequently, as long as the arbitration proceeding included basic procedural safeguards and does not trespass on a federal interest, the findings of the arbitrator may be entitled to preclusive effect. *See id.* at 1861 (concluding that arbitrator's factual findings would be given preclusive effect given "the nature of the…claim asserted and the procedural adequacy of the arbitration proceeding"). [3]

---

[3] The Court also notes that the failure to confirm the arbitration award prior to the Debtor's filing of his petition does not automatically prevent the application of collateral estoppel. *Cf. City of Gainesville, Fla. v. Island Creek Coal Sales Co.*, 618 F. Supp. 513, 517-18 (N.D. Fla. 1984) (suggesting that collateral estoppel may apply to unconfirmed arbitration

The arbitration at issue here did not encroach on a federal interest.  In the arbitration, the parties did not ask the arbitrator to decide the issue of nondischargeability, and this Court is only contemplating the application of preclusion to the arbitrator's findings of fact and calculation of damages. *See generally In re Selmonosky*, 204 B.R. at 825.   Considering the procedure employed in the arbitration, it is evident that the parties had a full and fair opportunity to litigate the issues raised in that action.  Among other things, the parties were represented by counsel, they were allowed to present evidence, and they were allowed to cross-examine witnesses. Finally, and importantly, the Debtor does not contend that the Court should not give the award preclusive effect, but instead only argues that the award is insufficient to support a finding of nondischargeability.  Thus, the Court will treat the conclusions of the arbitrator as established.

---

awards), *aff'd*, 771 F.2d 1495 (11th Cir. 1985).

*2. Nondischargeability Under § 523(a)(4)*

The Debtor does not contest that the arbitrator's award is entitled to deference and preclusive effect, but he does contest the sufficiency of the arbitrator's findings to support a decision concerning nondischargeability. Therefore, the Court must now apply the particular provisions of § 523(a), upon which the Plaintiff relies, to the arbitrator's findings.

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. 523(a)(4).   From the text's syntax, it is apparent that the requirement that the debtor be acting in a fiduciary capacity only applies to debts "for fraud or defalcation."   *See SmithKline Beecham Corp. v. Lam (In re Lam)*, No. 06-68805-MGD, 2008 WL 7842072. at *3 (Bankr. N.D. Ga. Mar. 27, 2008) (Diehl, J.); *Nat'l City Bank v. Imbody (In re Imbody)*, 104 B.R. 830, 840 (Bankr. N.D. Ohio 1989).   For the purposes of the statute, the

16

fiduciary relationship "is not one implied by contract or by the factual situation of the parties and the law, but is one of technical or express trusts." *Mullis v. Walker (In re Walker)*, 7 B.R. 563, 564 (Bankr. M.D. Ga. 1980). Thus, "constructive or resulting trusts, which generally serve as a remedy for some dereliction of duty in a confidential relationship, do not fall within the § 523(a)(4) exception." *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006) (internal quotation marks omitted). Here, there is no evidence of the existence of any express trust relationship, so the Court's inquiry will focus on the other two grounds for exception from discharge contained in § 523(a)(4): *embezzlement* and *larceny*. When considering embezzlement and larceny in the context of § 523, courts apply the "federal common law" definitions for those terms. *In re Lam*, 2008 WL 7842072, at *3.

"Embezzlement is the 'fraudulent appropriation of property by a

17

person to whom such property has been entrusted, or into whose hands it has lawfully come." *Cloninger v. Cloninger (In re Cloninger)*, 548 B.R. 839, 860 (Bankr. N.D. Ga. 2016) (Bonapfel, J.).  Because embezzlement requires "fraudulent" appropriation, it is necessary to show that the debtor acted "with fraudulent intent or deceit." *In re Lam*, 2008 WL 7842072, at *3; *see also Neal v. Clark*, 95 U.S. 704, 709 (1877) ("[T]he 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement…..").  The debtor's intent may be proved by circumstantial evidence. *Id.*; *see also Sandalon v. Cook (In re Cook)*, 141 B.R. 777, 783 (Bankr. M.D. Ga. 1992).

"Larceny is a felonius taking of property with the intent to convert it or to permanently deprive the owner of it." *In re Cloninger*, 548 B.R. at 860 (internal quotation marks omitted) (quoting *Burke v. Riddle (In re Riddle)*, No. 10-4088, 2011 WL 2461896, at *4 (Bankr. N.D. Ga. Apr. 6,

18

2011) (Bonapfel, J.)).  Larceny does not apply to situations in which the debtor obtained the property lawfully.  *See Thompson v. Barbee (In re Barbee)*, 479 B.R. 193, 207 (Bankr. S.D. Ga. 2012).  Like embezzlement, larceny requires fraudulent intent.  *In re Cloninger*, 548 B.R. at 860.

Turning to the instant proceeding, the arbitrator's award can be broken into three parts: (1) an award for the client list, (2) an award for Cook's estate's share of the LLC, and (3) an award for attorney's fees and arbitration costs.  These are three distinct bases of recovery, so the Court will consider § 523(a)(4)'s applicability to each, individually.

The Court first considers the $150,000 award relating to the client list. The arbitrator concluded that the Debtor "converted for his own benefit the client base of the decedent."  Conversion involves conduct similar to that required for embezzlement and larceny, namely, the wrongful exercise of control over the property of another.  *See, e.g.*, *Parks v. Multimedia Techs.*,

19

*Inc.*, 520 S.E.2d 517, 525 (Ga. Ct. App. 1999) ("Conversion is the unauthorized assumption and exercise of ownership over the personalty of another…contrary to the owner's rights."). Critically, however, conversion lacks any intent requirement. *See Ryan v. Reynolds (In re Reynolds)*, No. 05-9078, 2006 WL 6592050, at *3 (Bankr. N.D. Ga. Apr. 6, 2006) (Murphy, J.). Consequently, "a finding of conversion [does] not necessarily result in a conclusion of nondischargeability under § 523(a)(4)." *Id.* Therefore, the arbitrator's conclusion that the Debtor "converted" the client list is not sufficient to support summary judgment. *See Flemm v. Trexler (In re Trexler)*, 528 B.R. 842, 852 (Bankr. N.D. Ga. 2015) (declining to apply collateral estoppel to finding of conversion under Florida law).

There are other facts found by the arbitrator, however, that suggest the Debtor acted with the requisite intent. The arbitrator found that the Debtor "stonewalled" the Plaintiff and refused to give her information. He also

20

found that the Debtor had changed his mind about trying to sell Cook's client list.  Finally, the arbitrator concluded that the Debtor "ha[d] not dealt in good faith with the widow and estate administratrix of his deceased colleague and fellow LLC member."

Nevertheless, the Court concludes that these findings are insufficient to support summary judgment.  Though the arbitrator concluded that the Debtor did not deal "in good faith" with the Plaintiff, the award does not make clear that that finding was the equivalent of a finding of fraudulent intent in the conversion of the client list.  *Cf. Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 705-06 (N.D. Ga. 2000) (concluding that finding necessary to support judgment for fraud under Georgia law was equivalent to finding necessary to support exclusion from discharge under § 523(a)(2)). The court is unwilling to enter summary judgment based on such a conclusion in the absence of a clear identity of issues.  *See generally Flemm*

21

*v. Trexler (In re Trexler)*, 528 B.R. 842, 851-52 (Bankr. N.D. Ga. 2015) (Hagenau, J.) (finding lack of identity of issues between Florida conversion judgment and action under § 523(a)(6)).

Thus, the Court is left with the facts found by the arbitrator. These facts are evidence of fraudulent intent, even evidence sufficient for a reasonable trier of fact to find fraudulent intent at trial. But this is not trial. This is a motion for summary judgment, and the evidence is not so overbearing, especially when viewed in the light most favorable to the Debtor, as to forestall a reasonable trier of fact from finding that the intent element of § 523(a)(4) has not been met. Therefore, the Court will not grant summary judgment for the Plaintiff as to § 523(a)(4) concerning the client list.

The arbitrator also awarded the Plaintiff $45,000 "representing [Cook's] capital and other interests in the cash accounts of the LLC."

22

While the arbitration award indicates that this $45,000 was wrongfully withheld from the Plaintiff for some time, there is nothing in the award indicating that the Debtor appropriated these funds or otherwise took them for himself.  Consequently, the Court will not grant summary judgment under § 523(a)(4) on this point.

Finally, the Court addresses the awards for attorney's fees and the expenses of arbitration.   Fees and expenses may be declared nondischargeable if they are awarded in connection with an otherwise nondischargeable award, that is, if they are awarded as recompense for the same conduct.  *See generally Cincinnati Ins. Co. v. Porter (In re Porter)*, No. 06-5002-PWB, 2007 WL 7141821, at *1 (Bankr. N.D. Ga. May 22, 2007) (Bonapfel, J.) ("The court determined that Cincinnati was entitled to judgment against Mr. Porter…and that the debt and, to the extent recoverable, prejudgment interest, attorney's fees, and punitive damages

23

were excepted from discharge under § 523(a)(2)(A).").  Here, the Court has not found that summary judgment should be entered concerning the dischargeability under § 523(a)(4) of any part of the debt, so summary judgment on the awards of fees and expenses is likewise not appropriate. Accordingly, the Court will not grant summary judgment as to the fees and costs awarded by the arbitrator.

*3. Nondischargeability Under § 523(a)(6)*

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  In the text of the statute, "'willful' modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely…a deliberate or intentional *act* that leads to injury."  *Kawaauhau v. Geiger*, 523 U.S. 57, 57 (1998).  Thus, in order to satisfy the "willful" element of § 523(a)(6), a plaintiff must show that the

debtor commited "an intentional act the purpose of which [was] to cause injury or which [was] substantially certain to cause injury." *Kane v. Stewart Tilgham Fox & Bianchi PA (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014).  An injury is "malicious" if it is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Id.* at 1294.

Applying § 523(a)(6) to the award for the conversion of the client list, the Plaintiff once again runs into an intent requirement.  A finding of conversion, which does not require a conclusion concerning a mental state, is not sufficient to establish nondischargeability under § 523(a)(6).  *See Kawaahua*, 523 U.S. at 63-64 ("[N]ot every tort judgment for conversion is exempt from discharge.  Negligent or reckless acts…do not suffice to establish that a resulting injury is 'willful and malicious.'"); *In re Lam*, 2008 WL 7842072, at *5 ("Conversion does not necessarily include section

25

523(a)(6)'s intent element….").  Consequently, the Court is once again left with the arbitrator's factual findings.  And just as those findings were insufficient to establish fraudulent intent under § 523(a)(4), they are likewise insufficient to show the intent to injure required by § 523(a)(6).

The same lack of evidence of intent makes summary judgment as to the other amounts awarded to the Plaintiff improper as well.  Though the Court could conclude that the failure to pay the Plaintiff Cook's share of the LLC was willful and malicious, the evidence here, viewed in the light most favorable to the Debtor, is not sufficient to justify that conclusion at the summary judgment stage.  Additionally, as the Court has declined to enter summary judgment as to the nondischargeability of the $150,000 and $45,000 awards, the Court declines to enter summary judgment concerning the awards for attorney's fees and arbitration expenses as well.  Indeed, the arbitrator awarded the Plaintiff $17,000 in attorney's fees "as the prevailing

party in this matter," and awarded the Plaintiff $11,006.25 of the arbitration fees seemingly for the same reason.  There is no indication in the award that the arbitrator intended these amounts to compensate the Plaintiff for the Debtor's conduct.[4]

B. Should the Court Deny the Debtor a Discharge Under § 727(a)?

Having addressed the Plaintiff's claims under § 523, the Court turns now to the claims brought under § 727, which concern whether the Debtor is entitled to a discharge at all.  The Plaintiff alleges two general grounds for why the Court should deny the Debtor's discharge: (1) the Debtor transferred assets prepetition; and (2) the Debtor failed to report all of his assets on his schedules.  The Court will address each in turn.  The Debtor

---

[4] In responding to the Plaintiff's motion for summary judgment, the Debtor argued that the arbitrator's award was based on the breach of the operating agreement, rather than on an independent finding of wrongdoing, thus making considerations of nondischargeability under § 523(a)(6) inapplicable.  As the Court has resolved the motion on other grounds, it need not address that argument at this time.

27

has also moved for summary judgment on these claims, so the issue appears

ripe for the entry of summary judgment.

*1. Section 727(a)(2)*

Section 727(a)(2) bars a debtor from receiving a discharge if

> the debtor, with intent to hinder, delay, or defraud a creditor
> or an officer of the estate charged with custody of property
> under this title, has transferred, removed, destroyed,
> mutilated, or concealed, or has permitted to be transferred,
> removed, destroyed, mutilated, or concealed—
>      (A) property of the debtor, within one year before the
> date of the filing of the petition; or
>      (B) property of the estate, after the date of the filing of
> the petition….

11 U.S.C. § 727(a)(2).  The objective of this statute is straightforward: "to

prevent the discharge of a debtor who attempts to avoid payment to

creditors by concealing or otherwise disposing of his assets."  *Gebhardt v.*

*McKeever (In re McKeever)*, 550 B.R. 623, 635 (Banrk. N.D. Ga. 2016)

(Hagenau, J.) (quoting 6 COLLIER ON BANKRUPTCY ¶ 727.02[1] (Alan N.

28

Resnik & Henry J. Sommer eds., 16th ed. Supp. 2013)).

In order to succeed under § 727(a)(2), the plaintiff must show that the property at issue was property of the debtor or property of the estate, as the case may be.  *See generally Cambridge Tempositions, Inc. v. Cassis (In re Cassis)*, 220 B.R. 979, 983 (Bankr. N.D. Iowa 1998).  There is no dispute that the transfers to which the Plaintiff alludes in her complaint were pre-petition transfers.  Consequently, the Plaintiff is seeking to have the Debtor's discharge denied under subpart (A) of § 727(a)(2), which concerns transfers of "property of the debtor, within one year before the date of the filing of the petition."  *See* 11 U.S.C. § 727(a)(2)(A).

The Plaintiff alleges in her complaint that "the Debtor transferred assets to family members and to third parties to benefit himself and his spouse within one year of filing the petition."  The Plaintiff attached copies of a number of checks to her complaint, which appear to show

29

disbursements from the LLC's bank account to various entities, including the Debtor and one David Knight (presumably a relative). The Plaintiff maintains that the LLC's funds belonged to her (as the administrator of Cook's estate) and the Debtor in 50% shares. Thus, she argues, "any remaining monies would have been owned by [the Debtor] and would constitute his bankruptcy estate."

In his motion for summary judgment, the Debtor does not deny the transfers, but contends that they do not implicate § 727(a)(2) because they were not transfers of his own property prior to the filing of the case. Essentially, he argues that the money belonged to the LLC, so the transfers are not "of the debtor's property." In response, the Plaintiff contends that the Debtor "converted" the LLC's assets to himself to pay his personal expenses and that the LLC was the Debtor's "alter ego."

"A debtor's transfers of a company's assets, even if the debtor is an

30

insider of the company, does not constitute a transfer of the *debtor's* property for purposes of § 727(a)(2)." *Dych v. VanBrocklin (In re VanBrocklin)*, 566 B.R. 90, 97 (Bankr. N.D. Ga. 2017) (Drake, J.). Even if a debtor has a "*derivative interest*" in the business's property, that is not sufficient to make the property "property of the debtor"—the debtor must have a "*direct* proprietary interest." *Moyer v. Geer (In re Geer)*, 522 B.R. 365, 391 (Bankr. N.D. Ga. 2014) (Hagenau, J.) (emphasis in original). Here, the transfers are transfers of property of the LLC, not of the Debtor. Therefore, § 727(a)(2)(A) does not apply.

The Plaintiff's contention that the Debtor "converted" the assets does not alter that conclusion. Concerning converted assets, this Court has recently held that "one who converts assets does not obtain title to those assets as a result of his conversion." *In re VanBrocklin*, 566 B.R. at 98. Consequently, even if the Debtor "converted" the assets of the LLC, those

31

assets did not become "property of the Debtor that the Trustee could recover and liquidate to pay creditors." *See id.* Thus, the transfers would still not implicate § 727(a)(2)(A).

The Court also rejects the Plaintiff's argument that the funds were "property of the debtor" because the Debtor was using the LLC as his "alter ego." What the Plaintiff is attempting to accomplish is a "reverse veil pierce," whereby equitable principals are employed to disregard the "corporate"[5] form and allow a creditor of a company's principal to reach the assets of the company. *See generally* 51 Am. Jur. 2d *Limited Liability Companies* § 20 (May 2017 Update). In other words, the Plaintiff is arguing that the LLC's assets are property of the Debtor that would have become property of the estate under § 541. *See* 11 U.S.C. § 541(a).

It is well established that, "unless a federal interest requires a different

---

[5] This case involves a limited liability company, not a corporation, but the concept is the same.

result, state law governs the determination of what legal or equitable interests a debtor holds in property." *In re McKeever*, 550 B.R. at 636. Therefore, the Court must consider whether, under Georgia law, the property of the LLC may be considered property of the Debtor under a "reverse veil-piercing" theory.

The short answer is "No." *See, e.g.*, *Corrugated Replacements, Inc. v. Johnson*, 797 S.E.2d 238, 243 (Ga. Ct. App. 2017) (noting the "general rejection of the reverse veil-pierce theory"). The Georgia Supreme Court "has 'reject[ed] reverse veil piercing, at least to the extent that it would allow an 'outsider,' such as a third-party creditor, to pierce the veil in order to reach a corporation's assets to satisfy claims against an individual corporate insider.'" *Holiday Hosp. Franchising, Inc. v. Noons*, 749 S.E.2d 380, 380 (Ga. Ct. App. 2013) (alteration in original) (quoting *Acree v. McMahan*, 585 S.E.2d 873, 874 (Ga. 2003)). Consequently, as the Debtor's

33

creditors could not reach through him to the LLC's assets under state law, a transfer of the LLC's assets pre-petition is not an offense which implicates § 727(a)(2)(A)—there has been no dissipation of the assets available to creditors. *See generally In re Geer*, 522 B.R. at 392-93 (considering and rejecting the plaintiff's "reverse veil piercing" argument in the context of a § 727(a)(2) claim). Therefore, there is no genuine issue of material fact on the Plaintiff's § 727(a)(2)(A) claim, and summary judgment for the Debtor is appropriate.

*2. Section 727(a)(4)*

Section 727(a)(4) bars a debtor from receiving a discharge if, "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4). To succeed under this statute, a plaintiff must show "that the false oath or account was made knowingly and fraudulently about a material matter." *In re Matus*, 303 B.R.

34

at 676; *accord Williams v. Williams (In re Williams)*, No. 13-5010, 2013 WL 6017464, at *6 (Bankr. M.D. Ga. Nov. 12, 2013). "[D]eliberate omissions from schedules or the statement of financial affairs may…constitute false oaths or accounts." *In re Matus*, 303 B.R. at 676. This makes sense, as the purpose of the section is to ensure complete disclosure by a debtor, which is essential to the efficient functioning of the Bankruptcy system. *See id.* at 675-76.

Because the goal is full disclosure, it also makes sense that the scope of what constitutes a "material matter" for purposes of § 727(a)(4)(A) is quite broad: "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam).

35

Furthermore, it is generally not up to the debtor to pick and choose what information he thinks is "material," as "[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them." *Id.*; *accord In re Matus*, 303 B.R. at 675. Still, "the Debtor has no duty to disclose property in which he does not have an interest," *In re VanBrocklin*, 566 B.R. at 100, but even assets without value may be considered "material," *see In re Chalik*, 748 F.2d at 618 ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding: such a defense is specious.").

Whether an asset has value, however, is a factor to consider when determining whether the debtor made the false oath with knowledge and fraudulent intent. *See* HON. W. HOMER DRAKE, JR. & KAREN D. VISSER, BANKRUPTCY PRACTICE FOR THE GENERAL PRACTITIONER § 11:21. This is

36

because intent can be inferred from the whole of the debtor's conduct.  *See, e.g.*, *Bank of Am. v. Seligman (In re Seligman)*, 478 B.R. 497, 504 (Bankr. N.D. Ga. 2012) (Ellis-Monro, J.) ("Since defendants are rarely willing to admit fraudulent intent, actual intent may be inferred from circumstantial evidence.").  Intent is critical, as "'[a]n inadvertent omission or an omission resulting from an honest but erroneous belief that the information need not be disclosed' does not constitute a knowingly false omission." *Segell v. Letlow (In re Letlow)*, 385 B.R. 782, 796 (Bankr. N.D. Ga. 2007) (Massey, J.) (alteration in original) (quoting *Am. Express Travel Related Servs. Co., Inc. v. Scott (In re Scott)*, No. 01-6117, 2004 WL 3623508, at *4 (Bankr. N.D. Ga. Oct. 1, 2004) (Murphy, J.)).

Here, the Plaintiff alleges that the Debtor failed to disclose the following assets: (a) the Debtor's interest in an office building in Griffin, Georgia; (b) the Debtor's client list (and Cook's client list); and (c) the

37

Debtor's interests in Shoal Creek Development Co. (hereinafter "Shoal Creek"), Griffin Ready Mixed Concrete Co. (hereinafter "Ready Mixed"), and Alton Wayne Knight, LLC (hereinafter "AWK").  In his motion for summary judgment, the Debtor, for various reasons, maintains that these omissions are insufficient to deny his discharge.  As to all of them, the Debtor contends that the Plaintiff has no evidence to show he omitted anything from his schedules knowingly and fraudulently.  The Court will address each alleged omission in turn.

a. The Office Building

In her response to the Defendant's motion, the Plaintiff states, "As shown in the Statement of Facts filed by the Plaintiff, the Complaint with its documentation, and in Plaintiff's declaration, [the Debtor] attempted to transfer…his share of the office building to his wife, however, the deed failed." (Doc. No. 36 at 1).  The allegation appears to be that the Debtor

38

should have listed his interest in an office building he had transferred to his wife in 2008 as an asset in his schedules, as the transfer to his wife was invalid.

The Debtor admits that the deed transferring his interest in the office building to his wife in 2008 lacked a witness and was, therefore, defective under Georgia law.  However, he maintains that the transfer remains valid between himself and his wife despite the defect.  Thus, he argues, he has no interest in the office building.

Georgia law requires "a deed to lands," if it is not electronically filed, to be "in writing, signed by the maker, attested by an officer…, and attested by one other witness."  O.C.G.A. § 44-5-30.  The deed at issue in this proceeding bears the signature of the Debtor and a notary public, but no unofficial witness.

Interpreting a former, but similar, version of the deed statute, the

39

Georgia Supreme Court concluded that the witness requirement is "a requirement of law necessary to be met in order to entitle a deed to record." *Hoover v. Mobley*, 31 S.E.2d 9, 12 (Ga. 1944). The Georgia Supreme Court went on to note, "A deed without witnesses is legal and binding between the parties thereto…." *Id.* Consequently, it appears that the Debtor's assertion is correct—the deed was valid between himself and his wife despite the lack of a witness, and, therefore, he had no interest in the office building at the time he filed the petition. Accordingly, his failure to schedule the interest is not a false oath for the purposes of § 727(a)(4).

### b. The Client Lists

On his Schedule B, the Debtor lists as an asset "Ownership of AWKPHC LLC dba Knight and Cook, CPA's." The Debtor does not list his client list as a separate asset. The Plaintiff takes issue with this, arguing that the client list is a valuable asset that should be listed separately. She

40

also asserts that the Debtor should have listed Cook's client list as an asset because he "took and converted [it]." (Compl. at ¶ 47). In support of his motion for summary judgment, the Debtor contends that his scheduling of his interest in the LLC as a whole was sufficient

The Court agrees with the Debtor that there was no need for him to schedule his client list separately from his aggregate interest in the LLC. In an instance such as this, disclosure of the whole suffices as disclosure of the parts. The disclosure of the interest in the accounting practice as a whole was sufficient notice to the Trustee and other parties that the Debtor had assets incident to the ownership of an accounting practice. The Plaintiff cites no authority, and the Court is not aware of any, requiring the line-item disclosure she believes the Debtor should have provided.

Additionally, concerning the Debtor's failure to schedule an interest in Cook's client list, the Court refers back to its discussion of conversion,

41

*supra*.  Even though the Debtor "converted" Cook's client list, he did not obtain title to it and, therefore, need not have scheduled it.  Indeed, it is disingenuous for the Plaintiff to argue that Cook's client list belongs to her, but that the Debtor should be forced to list it as one of his assets that the Trustee could liquidate to pay the Debtor's creditors.

### c. The Interests in the Companies

In his declaration filed in support of his motion for summary judgment, the Debtor states that a former client of his was a shareholder of Shoal Creek and owned a 4.5% interest in Ready Mixed.  This client named the Debtor as executor of his estate, and so upon the client's death, the Debtor "oversaw the sale of Shoal Creek."  The Debtor asserts that he never had an interest in either Shoal Creek or Ready Mixed.  (Decl. of Alton W. Knight, Doc. No. 24, at ¶¶ 14-15).  As to his interest in AWK, the Debtor acknowledges that he formed the company, but asserts that the company

42

was never active, and thus he simply forgot about it when he filled out his schedules.  (*See id.* at ¶ 16).

Though the Plaintiff alleges in her complaint that the Debtor failed to disclose his interests in these companies, she provides no evidence to support her allegation that the Debtor has an interest in Ready Mixed or Shoal Creek.  Indeed, her declaration mentions nothing about the Debtor's failure to disclose any of the assets the Court has discussed in this section. (*See* Decl. of Barbara Cook, Doc. No. 21, at ¶ 37 (alleging only that the Debtor made transfers within one year of the filing of the petition)).  The Plaintiff does state in her response to the Debtor's statement of facts that the Debtor is listed with the Georgia Secretary of State as the CEO of Shoal Creek and the CFO of Ready Mixed.  (Doc. No. 35, at ¶¶ 13-14).  However, there is no citation to any record materials to support those allegations.  *See* BLR 7056-1(a)(3) ("All documents and other record materials relied upon

43

by a party moving for or opposing a motion for summary judgment shall be clearly identified for the Bankruptcy Court."). Consequently, the Court finds that the Plaintiff has failed to support her assertions. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record…."). Because the Plaintiff has not supported her assertions, the Court finds that there is no genuine issue of material fact as to whether the Debtor has interests in Shoal Creek or Ready Mixed.

AWK presents a closer question. AWK is an asset of the Debtor, and it should have been scheduled. However, the evidence before the Court shows that AWK was a worthless asset, suggesting that the Debtor honestly forgot to schedule it. Indeed, the Plaintiff does not contest the Debtor's assertion that he merely overlooked AWK as an asset. In her response to the Debtor's statement of facts, the Plaintiff simply states, "Unknown, but

44

[it] is an asset and wasn't listed."   Additionally, as stated above, the Plaintiff's declaration in support of her motion contains no indication that the Debtor fraudulently failed to schedule anything, let alone his interest in AWK.

Accordingly, there is no genuine issue of material fact concerning the § 727(a)(4) claims, and summary judgment for the Debtor is appropriate.

## C. Is the Plaintiff Entitled to Attorney's Fees?

In Count IV of her complaint, the Plaintiff requests attorney's fees pursuant to O.C.G.A. § 13-6-11.   That section provides that "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith…, the jury may allow them."   O.C.G.A. § 13-9-11.   The "bad faith" mentioned in the statute is bad faith in the conduct which lead to the action.   *See Lewis*

45

*v. D. Hays Trucking, Inc.*, 701 F. Supp. 2d 1300, 1313 (N.D. Ga. 2010).

Georgia law requires that an award of fees under § 13-6-11 be in addition to an underlying award of other damages.  *See Gilmour v. Am. Nat'l Red Cross*, 385 F.3d 1318, 1324 (11th Cir. 2004); *Sandy Springs Toyota v. Classic Cadillac Atlanta Corp.*, 604 S.E.2d 303, 306 (Ga. Ct. App. 2004).  In this proceeding, the Plaintiff does not ask the Court to determine any entitlement to damages under Georgia law.  The Plaintiff requests findings of nondischargeability and whether the Debtor is entitled to a discharge.  Consequently, it appears that the Plaintiff is not entitled to an award of fees under § 13-6-11 in this proceeding.[6]

Therefore, in accordance with Federal Rule of Civil Procedure 56(f), the Court gives notice that it will grant summary judgment to the

---

[6] The Court emphasizes that it is only addressing attorney's fees under O.C.G.A. § 13-6-11 for the litigation in this Court.  Nothing in this section should be taken as a comment or conclusion concerning the Plaintiff's entitlement to such fees in other proceedings.

Debtor on Count IV of the Plaintiff's complaint, unless the Plaintiff shows cause why summary judgment should not be entered on that count. *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant….").

## Conclusion

In accordance with the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. No. 20) is **DENIED IN PART**.  The Court shall give the arbitration award preclusive effect as discussed above, but the Plaintiff's Motion for Summary Judgment is **DENIED** as to all counts of the Plaintiff's complaint.

**IT IS FURTHER ORDERED** that the Debtor's Motion for Summary Judgment (Doc. No. 23) as to Count III of the Plaintiff's complaint is **GRANTED**.  **IT IS FURTHER ORDERED** that summary

47

judgment for the Debtor on Count IV of the Plaintiff's complaint shall stand **GRANTED** unless the Plaintiff, within twenty-four (24) days of the entry of this Order,[7] shows cause why the Court should not grant summary judgment on that count.

The Court will enter judgments, as appropriate, in accordance with this Order.

The Clerk is **DIRECTED** to serve this Order on the parties, their respective counsel, the Chapter 7 Trustee, and the United States Trustee.

**END OF DOCUMENT**

---

[7] The Debtor may also file a brief on this point within that time if he so desires.

48